UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA, as subrogee and assignee of
THE ROCKEFELLER FOUNDATION,

        Plaintiff,

- against -

ANTHONY McEWAN, FRANK MELLI, PAUL
SHUSTERMAN, LISA BAKER and LACHO
TERRAZAS,

        Defendants.

-------------------------------------------------------------x

07 CIV 7515

Index No.:

JUDGE JONES

COMPLAINT

Plaintiff Demands
A Trial By Jury



RECEIVED
AUG 2 4 2007
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), as subrogee and assignee of The Rockefeller Foundation ("Rockefeller"), by its attorneys, McELROY, DUETSCH, MULVANEY, & CARPENTER, LLP, as and for its complaint against the Defendants alleges upon information and belief as follows:

### Summary of Allegations

1.     This action arises out of a conspiracy to defraud Rockefeller out of hundreds of thousands of dollars.

2.     The Defendants perpetrated this fraud by concocting a scheme (hereinafter referred to as the "Fraudulent Scheme") designed to take advantage of Rockefeller's gift matching program (hereinafter referred to as the "Program"). Under the Program, Rockefeller matches (on a 3 to 1 basis) donations made by its employees to 501(c)(3) non-profit charities, up to a maximum of $30,000.

3. The Fraudulent Scheme was designed and implemented for the singular purpose of stealing money from Rockefeller.

4. The Fraudulent Scheme was designed and carried out by the defendants, with the assistance of former Rockefeller employee Cheryl McEwan, who was tried, convicted and sentenced to 3½ - 10½ years in prison for her role in the Fraudulent Scheme. Upon the discovery of the fraud by Rockefeller, Anthony McEwan ("McEwan") was indicted, pleaded guilty to grand larceny and was sentenced to 2 – 6 years in prison. Frank Melli ("Melli") was indicted, pleaded guilty to falsifying business records and was sentenced to unsupervised probation.

5. The defendants acted in concert to advance the Fraudulent Scheme for the purpose only of lining their own pockets with the ill-gotten gains.

## The Parties

6. At all times relevant herein, Rockefeller, was and still is a New York corporation organized and existing under and by virtue of the laws of the State of New York, and was and is duly authorized to transact business in the State of New York.

7. At all times relevant herein, defendant McEwan was an individual residing at 149-39 257th Street in Rosedale, New York 11422.

8. At all times relevant herein, defendant McEwan was an individual residing at 158-04 130th Avenue in Rochdale, New York 11434.

9. At all times relevant herein, defendant McEwan was an individual residing at 150-13 109th Avenue in Queens, New York 11433.

10. McEwan's date of birth is April 30, 1960.

11. At all relevant times herein, McEwen was married to Cheryl McEwan, who was employed by Rockefeller from 1990 - 2005.

12. At all relevant times herein, McEwan purported to form a charitable organization known as The Urban Alternative of New York ("Urban Alternative").

13. At all relevant times herein, Urban Alternative was an organization located at 225 Buffalo Avenue in Brooklyn, New York 11213.

14. At all relevant times herein, Urban Alternative was an organization located at 84-47 118th Street, #3B, in Kew Gardens, New York 11415.

15. At all times relevant herein, defendant Melli was an individual residing at 86-02 Park Lane South, 6B5, in Woodhaven, New York 11421.

16. Melli's date of birth is September 26, 1962.

17. Melli founded a charitable organization known as Green Sphere in or about 1988.

18. At all relevant times herein, Melli was the Executive Director and Co-Founder of Green Sphere.

19. At all relevant times herein, Green Sphere was an organization located at 86-02 Park Lane South, 6B5, in Woodhaven, New York 11421.

20. At all relevant times herein, defendant Shusterman was an individual residing at 625 Hudson Terrace, in Cliffside Park, New Jersey 07010

21. At all relevant times herein, defendant Shusterman was employed by Rockefeller.

22. At all relevant times herein, defendant Lisa Baker ("Baker") was an individual residing at 225 Buffal0 Avenue, 2E, Brooklyn, New York 11213-3285.

23. At all relevant times herein, Baker was an individual residing at 1334 SW 14th Street, Boca Raton, Florida 33486-5303.

24. At all relevant times herein, Baker was an employee of Urban Alternative.

25. At all relevant times herein, defendant Lacho Terrazas ("Terrazas") was an individual residing at 8447 118th Street, 3B, Kew Gardens, New York 11415-2924.

26. At all relevant times herein, Terrazas was an employee of Urban Alternative.

27. At all times relevant herein, National Union issued a policy of insurance (No. 978-2316) to Rockefeller, thereby insuring Rockefeller for losses sustained as a result of "Employee Dishonesty," as defined therein.

28. Pursuant to the aforementioned policy of insurance that was in full force and effect at all times hereafter mentioned, National Union indemnified Rockefeller for losses it sustained as a result of losses caused by the defendants and National Union has become subrogated and/or assigned to all of the rights, claims and/or causes of action of its insured, Rockefeller, against the defendants named herein and all of the other parties, yet to be identified, responsible for the losses sustained by Rockefeller.

29. Each of the defendants acted as agents for each other for the purpose of advancing the Fraudulent Scheme.

### The Facts

30. From 1998 – 2004, Cheryl McEwan made purported donations to Green Sphere pursuant to the terms of the Program. Melli was the Executive Director and Co-Founder of Green Sphere. Upon receiving donations from Cheryl McEwan, Melli would cash the checks and submit the matching gift application to Rockefeller with proof that Green Sphere was a 501(c)(3) charity. After receiving the matching funds from Rockefeller, Melli would reimburse Cheryl McEwan for her donation and also provide her with a kick back. Some of that money was channeled through an account controlled by McEwan. In December of 2004, Shusterman

made a charitable contribution of $9,000 to Urban Alternative. Cheryl McEwan advanced Shusterman $9,000 for the contribution from her personal account in order to allow him to make the donation. From 1998 – 2004, the defendants utilized this aspect of the Fraudulent Scheme to steal $188,500 from Rockefeller.

31. In 2002, the defendants' Fraudulent Scheme was expanded to include purported donations to Urban Alternative. Urban Alternative was an organization controlled by McEwan. The donations made by Cheryl McEwan to Urban Alternative were never deposited in Urban Alternative's account. Baker and Terrazas returned matching gift applications on behalf of Urban Alternative to Rockefeller. The matching checks from Rockefeller were deposited in Urban Alternative's account, and then transferred into McEwan's personal account. From 2002 – 2005, the defendants utilized this aspect of the Fraudulent Scheme to steal $232,500 from Rockefeller.

32. Rockefeller uncovered the defendants' Fraudulent Scheme in 2005, after denying a matching $21,000 contribution made by Cheryl McEwan to Green Sphere. An investigation by the New York City District Attorney's office revealed that none of the funds donated by Rockefeller were utilized for charitable purposes. Instead, the money was used by the defendants for their own personal expenses (i.e. mortgage payments, credit card payments, etc.).

33. McEwan and Melli were indicted on March 29, 2006, along with Cheryl McEwan, on charges of Grand Larceny in the Second Degree for their role in the Fraudulent Scheme. McEwan pleaded guilty to Grand Larceny and was sentenced to 2 – 6 years in prison. Melli pleaded guilty to falsifying business records and was sentenced to unsupervised probation. Cheryl McEwan was convicted on eight criminal charges and sentenced to 3½ - 10½ years in prison.

34. The defendants invented and used the Fraudulent Scheme for the sole purpose of stealing from Rockefeller for purposes of their own personal benefit.

## Jurisdiction and Venue

35. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

36. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2).

## COUNT I
### (Fraud Against All Defendants)

37. National Union repeats and re-alleges each of the allegations contained in paragraphs "1" through "36" as if fully set forth herein.

38. Defendants, through the Fraudulent Scheme set forth herein defrauded Rockefeller by stealing money belonging to Rockefeller.

39. As a direct result of defendants' fraud, Rockefeller sustained damages in the total sum of at least $421,000.00.

40. Pursuant to the aforementioned policy of insurance that was in full force and effect at all times during the fraudulent scheme, National Union reimbursed Rockefeller in connection with the aforesaid loss and National Union has become subrogated and/or assigned to all of the rights, claims and/or causes of action of its insured, Rockefeller, against the defendants named herein and all of the other parties, yet to be identified, responsible for the losses sustained by Rockefeller.

41. By reason of the foregoing fraud, defendants are liable and indebted to National Union in the total sum of at least $421,000.00, with interest accruing from 1998.

## COUNT II
### (Conspiracy to Defraud Against All Defendants)

42. National Union repeats and re-alleges each of the allegations contained in paragraphs "1" through "41" as if fully set forth herein.

43. Upon information and belief, defendants entered into an agreement and conspiracy among themselves to divert money rightfully belonging to Rockefeller to defendants for their own personal benefit.

44. Defendants purposefully and knowingly deceived Rockefeller and misled it into entering into the fraudulent transactions concocted through the Fraudulent Scheme without disclosing to Rockefeller that the transactions were intended only to enable defendants to divert money from Rockefeller for their personal benefit.

45. In furtherance of the Fraudulent Scheme and conspiracy, the defendants misrepresented to Rockefeller that the charitable donations made to Green Sphere and Urban Alternative were legitimate and intended to be utilized for charitable purposes, when in fact they were not.

46. Defendants acted with malice and willful disregard for Rockefeller's welfare.

47. As a direct result of defendants' fraud, Rockefeller sustained damages in the total sum of at least $421,000.00, with interest accruing from 1998.

48. Pursuant to the aforementioned policy of insurance that was in full force and effect at all times during the fraudulent scheme, National Union reimbursed Rockefeller in connection with the aforesaid loss and National Union has become subrogated and/or assigned to all of the rights, claims and/or causes of action of its insured, Rockefeller, against the defendants named herein and all of the other parties, yet to be identified, responsible for the losses sustained by Rockefeller.

49. By reason of the foregoing conspiracy to fraud, defendants are liable and indebted to National Union in the total sum of at least $421,000.00, with interest accruing from 1998.

## COUNT III
### (Monies Wrongfully Had and Unjust Enrichment Against All Defendants)

50. National Union repeats and re-alleges each of the allegations contained in paragraphs "1" through "49" as if fully set forth herein.

51. Defendants wrongfully obtained monies of Rockefeller and thereby have been unjustly enriched by, *inter alia*, their unlawful misappropriation of money from Rockefeller for their own personal benefit, for which plaintiff has no adequate remedy at law.

52. As a direct and proximate result of the foregoing, Rockefeller sustained damages in the total sum of at least $421,000.00.

53. Pursuant to the aforementioned policy of insurance that was in full force and effect at all times during the fraudulent scheme, National Union reimbursed Rockefeller in connection with the aforesaid loss and National Union has become subrogated and/or assigned to all of the rights, claims and/or causes of action of its insured, Rockefeller, against the defendants named herein and all of the other parties, yet to be identified, responsible for the losses sustained by Rockefeller.

54. By reason of the aforesaid, defendants have been unjustly enriched and are liable to make restitution to National Union in the total sum of at least $421,000.00, with interest accruing from 1998.

## COUNT IV
### (Conversion Against All Defendants)

55. National Union repeats and re-alleges each of the allegations contained in paragraphs "1" through "54" as if fully set forth herein.

56. Defendants exercised unlawful dominion and control over the assets of Rockefeller and converted to their personal benefit substantial assets rightfully belonging to Rockefeller.

57. Defendants' exercise of dominion over Rockefeller's funds was willful, wanton, malicious and/or done with reckless indifference to the rights of Rockefeller.

58. Defendants have committed theft and unlawfully converted the foregoing monies to their own wrongful benefit.

59. As a direct result of the defendants' unlawful conversion, Rockefeller has suffered damages in an amount to be determined at trial, but in no event, less than $421,000.00.

## COUNT V
### (Federal Civil RICO Against All Defendants)

60. National Union repeats and re-alleges each of the allegations contained in paragraphs "1" through "59" as if fully set forth herein.

61. Defendants, for the purpose of executing the Fraudulent Scheme, created, acquired, invested in, controlled and maintained the fictitious donations to purported non-profit charitable organizations, and thereby engaged in interstate commerce by use of the mails, telephone, telegraph and other wires dedicated to the communication of electronic data of the United States.

62. Defendants, individually, and in conspiracy, engaged in activities affecting interstate commerce, including, among others, transferring funds that have moved in interstate commerce, submitting matching gift applications to Rockefeller through the mail, and creating fictitious charitable donations with the aforementioned entities for the performance of payments made in interstate commerce.

63. The transmission of interstate communications by wire or telephone to effectuate

the Fraudulent Scheme, which occurred on more than one occasion, and/or the use of the mails or other delivering agent for purposes of effectuating the Fraudulent Scheme, constitutes, for the purposes of this action, a pattern of racketeering activity in violation of 18 U.S.C.A. § 1962, for which treble damages, costs of suit and attorney's fees may be sought under 18 U.S.C.A. § 1964(c).

64.   As a direct result of the defendants' Fraudulent Scheme, Rockefeller sustained damages in the total sum of at least $421,000.00.

65.   Pursuant to the aforementioned policy of insurance that was in full force and effect at all times during the fraudulent scheme, National Union reimbursed Rockefeller in connection with the aforesaid loss and National Union has become subrogated and/or assigned to all of the rights, claims and/or causes of action of its insured, Rockefeller, against the defendants named herein and all of the other parties, yet to be identified, responsible for the losses sustained by Rockefeller.

66.   By reason of the foregoing, defendants are liable and indebted to National Union in the total sum of at least $421,000.00, together with interest accruing from at least 1998, treble damages, costs of suit and attorney's fees.

**COUNT VI**
**(Breach Of Contract and Breach Of Fiduciary Duty as Against Shusterman)**

67.   National Union repeats and re-alleges each of the allegations contained in paragraphs "1" through "66" as if fully set forth herein.

68.   At all relevant times, Shusterman entered into employment with Rockefeller agreeing as part of his contract of employment to abide by Rockefeller's rules and regulations with regard to the manner and method of performing the duties to which he was assigned.

69. At all relevant times, Shusterman, as an employee of Rockefeller, owed fiduciary duties of care and loyalty to Rockefeller, thereby agreeing that as long as he was an employee of Rockefeller, he would perform his duties honestly, faithfully, and in the best interest of his employer.

70. Defendant Shusterman breached his employee contract and his fiduciary duties by entering into the foregoing unlawful, self-dealing, non-arms-length transactions to the substantial detriment of Rockefeller.

71. As a direct result of the foregoing, Rockefeller sustained damages in the total sum of at least $421,000.00.

72. Pursuant to the aforementioned policy of insurance that was in full force and effect at all times during the fraudulent scheme, National Union reimbursed Rockefeller in connection with the aforesaid loss and National Union has become subrogated and/or assigned to all of the rights, claims and/or causes of action of its insured, Rockefeller, against the defendants named herein and all of the other parties, yet to be identified, responsible for the losses sustained by Rockefeller.

73. By reason of the foregoing, defendant Shusterman is liable and indebted to National Union in the total sum of at least $421,000.00, with interest accruing from 1998.

**WHEREFORE**, Plaintiff National Union Fire Insurance Company of Pittsburgh, P.A., demands judgment against the Defendants as follows:

(a) On the first cause of action, awarding individual or joint and several damages against Defendants Anthony McEwan, Frank Melli, Paul Shusterman, Lisa Baker and Lacho Terrazas in an amount not less than $421,000.00, together with interest at from 1998 to the date of entry of judgment, in all being the sum of at least $421,000.00.

(b) On the second cause of action, awarding individual or joint and several damages against the Defendants Anthony McEwan, Frank Melli, Paul Shusterman, Lisa Baker and Lacho Terrazas in an amount not less than $421,000.00, together with interest from 1998 to the date of entry of judgment, costs of suit and attorney's fees;

(c) On the third cause of action, awarding damages against the Defendants Anthony McEwan, Frank Melli, Paul Shusterman, Lisa Baker and Lacho Terrazas in an amount not less than $421,000.00, together with interest from 1998 to the date of entry of judgment, costs of suit and attorney's fees;

(d) On the fourth cause of action, awarding damages against the Defendants Anthony McEwan, Frank Melli, Paul Shusterman, Lisa Baker and Lacho Terrazas in an amount not less than $421,000.00, together with interest from 1998 to the date of entry of judgment, costs of suit and attorney's fees;

(e) On the fifth cause of action, awarding damages against the Defendants Anthony McEwan, Frank Melli, Paul Shusterman, Lisa Baker and Lacho Terrazas in an amount not less than $421,000.00, together with interest from 1998 to the date of entry of judgment, costs of suit and attorney's fees;

(f) On the sixth cause of action, awarding damages against Defendant Paul Shusterman in an amount not less than $421,000.00, together with interest from 1998 to the date of entry of judgment, costs of suit and attorney's fees.

(g) Awarding plaintiff National Union Fire Insurance Company of Pittsburgh, P.A., its costs, expenses, including attorney's fees incurred in prosecuting this action, and such other and further relief as the Court deems just and proper.

Dated: August 24, 2007

                            Respectfully,
                            McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

                            *[signature]*
                By_____
                            Richard S. Mills (RM 0206)
                            Brian W. Keatts (BK2000)
                            *Attorneys for Plaintiff*
                            88 Pine Street, 24th Floor
                            New York, NY 10005
                            (212) 483-9490